## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEIRA AVAUNI RAWLINGS, individually, and on behalf of all others similarly situated, | Case No.: |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| v. | |
| BATH SAVER, INC. d/b/a BATH FITTER | |
| Serve registered agent at: 542 Industrial Drive Lewisberry, Pennsylvania | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Meira Avauni Rawlings ("Rawlings" or "Plaintiff"), individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Bath Saver, Inc. d/b/a Bath Fitter ("Bath Fitter" or "Defendant"), states as follows.

### BACKGROUND ON THE TCPA

1.     Plaintiff Meira Avauni Rawlings brings this case to protect the privacy rights of herself and a class of similarly situated people to whom Defendant, Bath Saver, Inc. d/b/a Bath Fitter called despite their phone numbers being registered on the National Do-Not-Call Registry ("DNC List").

2.      In 1991, President George H.W. Bush signed into law the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights- namely, the right to be left alone from unwanted telemarketing calls.  A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3.      Three decades after the TCPA's passage, in 2023 alone, approximately 55 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Jan. 11, 2024).

4.      The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## THE PARTIES

5.      At all times relevant to this Complaint, Ms. Rawlings resided in, and has been a citizen of the State of North Carolina.

6.    Ms. Rawlings brings this action on behalf of herself and all others similarly situated.

7.    Defendant Bath Fitter is a Pennsylvania corporation that has been in good standing to transact business in Pennsylvania and nationwide at all times material to this Complaint.

8.    Defendant Bath Fitter maintains its headquarters and/or primary office at 542 Industrial Drive, Lewisberry, Pennsylvania 17339.

9.    At all times relevant to this action, Bath Fitter acted through its employees, representatives, agents, members, vendors and contractors.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

11.    This Court also has subject matter jurisdiction over this dispute under the Class Action Fairness Act, as the parties are minimally diverse, and the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2).

12.    Where Defendant is a citizen of the Commonwealth of Pennsylvania and maintains its headquarters and/or primary office of business in Pennsylvania, the Court has personal jurisdiction over the Parties to this matter.

13.    Furthermore, Defendant is a citizen of York County, Pennsylvania,

which is within this District.

14.    Additionally, a substantial part of the events giving rise to the claim at issue occurred in this District.

15.    Accordingly, venue is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## RELEVANT FACTUAL BACKGROUND

16.    At all times relevant to this Complaint, Ms. Rawlings was the owner and customary user of a cell phone, the number for which was 336-XXX-4138.

17.    Ms. Rawlings used and continues to use her cell phone for residential purposes, namely, to communicate with family members.

18.    Ms. Rawlings's cell phone is registered in her individual name, and not in the name of a business.

19.    To obtain solitude from unwanted telemarketing calls, Ms. Rawlings registered her phone number, 336-XXX-4138, on the DNC List on June 29, 2021.

20.    Bath Fitter describes its business model as offering "quality, customized bathroom remodeling products and services."

21.    Bath Fitter further boasts that it is "North America's leading acrylic bathtub, shower enclosure and tub-to-shower conversion company."

22.    Defendant has long engaged in aggressive telemarketing. To this end, Bath Fitter has settled at least one class action lawsuit involving telemarketing calls

it placed to persons whose phone numbers were registered on the DNC List. *See Miller v. Bath Saver, Inc. et al.*, Case No. 1:21-cv-1072-JPW (M.D. Pa. Mar. 6, 2023).

23.    This Court granted final approval of the settlement and enter judgment against Defendant on March 6, 2023.

24.    Even after judgment was entered against Defendant, it continued to engage in its aggressive telemarketing practices as to Ms. Rawlings and the putative class members.

25.    Specifically, in the Spring of 2023, Bath Fitter engaged in an aggressive unsolicited campaign of telemarketing calls to Rawlings.

26.    On March 28, 2023, Ms. Rawlings received a voicemail on her phone from Bath Fitter, which stated, "Hello, this is Joanna with Bath Fitter. Please return my call at 1-888-713-0083."

27.    On March 30, 2023, Ms. Rawlings received a voicemail from Bath Fitter which stated, "[This is] Anila calling with Bath Fitter. Please return my call at 1-888-713-0083.  Thank you."

28.    On April 7, 2023, Ms. Rawlings received a voicemail from Bath Fitter which stated, "Hi, this is Kat, calling from Bath Fitter. Please return my call at 1-888-713-0083.  Thank you."

29.     On April 19, 2023, Ms. Rawlings received a voicemail from Bath Fitter, which stated, "Hello, this is Courtney calling from Bath Fitter. Please return my call at 1-888-713-0083. Thank you."

30.     The undersigned confirms that upon calling that number, 1-888-713-0083, is in fact, associated with Bath Fitter.

31.     Ms. Rawlings had never previously done business with Bath Fitter, nor had she provided prior express written consent, or any form of consent, for Defendant to call her phone.

32.     On information and belief, Defendant attempted to call Plaintiff and the putative class members for the purpose of selling its products and services.

33.     Defendant's conduct violated the privacy rights of Plaintiff and the putative class members, as they were subjected to annoying and harassing phone calls. Defendant's phone calls intruded upon the rights of Plaintiff and the putative class members to be free from invasion of their interest in seclusion.

34.     Defendant's conduct caused Plaintiff and the putative class members to waste time addressing and/or otherwise responding to the unwanted calls.

35.     On information and belief, Defendant placed calls to Plaintiff and the putative class members for the purpose of selling its products and services.

**Direct and Vicarious Liability**

36.    Without having had the benefit of discovery to show otherwise, Rawlings understands and therefore avers that Bath Fitter is directly liable for the unsolicited calls because they were made directly by Bath Fitter

37.    Alternatively, if some or all of the calls were made by third-party/parties on behalf of Bath Fitter, then Bath Fitter is vicariously liable for those calls.

38.    On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

39.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal

actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*., at 6587.

40.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

41.     Defendant Bath Fitter may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Bath Fitter.

42.     While Plaintiff alleges Bath Fitter is directly liable based on what she knows and understands at this time, if she learns the calls were made by agent(s) acting on Bath Fitter's behalf, Plaintiff will seek to hold Bath Fitter vicariously liable for those calls.

## Class Allegations

43.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

44.    Plaintiff seeks to represent the following class:

> All persons in the United States who after March 6, 2023 through the date of class certification: (1) who were called by or on behalf of Defendant two or more times in a twelve-month period; and, (2) whose phone numbers had been registered on the DNC List for more than thirty days.

45.    Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

46.    The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believe that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

47.    Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

48.    On information and belief, Defendant has called and continues to call people whose phone numbers are on the National Do-Not-Call Registry. It is reasonable to expect that Defendant will continue to place such calls absent this lawsuit.

49.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant placed phone calls to persons whose phone numbers were listed on the National Do-Not-Call Registry;

b. Whether the subject calls were "solicitations" as defined by the TCPA;

c. If calls were made by third-parties, whether an "agency" relationship exists between Defendant and those third-parties;

d. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

f. Whether Defendant's violations were of a nature that would render said violations "willful" or "knowing" under the TCPA.

50.    Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

51.    Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers

who are competent and experienced in class action litigation, TCPA litigation and consumer law.

52.    Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

53.    A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For most members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

54.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

55.    Questions of law and fact, particularly the propriety of placing telemarketing phone calls to persons whose phone numbers are on the National Do-Not-Call Registry, predominate over questions affecting only individual members.

56.    Defendant has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) – Do-Not-Call Registry Violations.

57.    Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

58.    The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

59.    The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

60.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA and the TCPA's regulations prohibiting calls to phone numbers that are registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

61.    By placing phone calls to the phones of Plaintiff and the putative class

members after their numbers were registered on the National Do-Not-Call Registry, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

62.     Defendant knew or should have known that Plaintiff and the putative class members did not wish to receive phone calls as such persons' phone numbers were registered on the National Do-Not-Call Registry.

63.     Plaintiff and the putative class members are entitled to damages of $500.00 per violation for each call placed to them in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## Demand for Judgment

WHEREFORE Plaintiff Meira Avauni Rawlings, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a.     Enter an order against Defendant Bath Saver, Inc. d/b/a Bath Fitter pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Plaintiff as the class representative;

b.     Enter an order appointing Butsch Roberts & Associates LLC and Kimmel & Silverman, P.C., as counsel for the class;

c.     Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per

violation of the TCPA, or up to $1,500 per violation of the TCPA if Defendant willfully violated the TCPA;

d.      Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA and the TCPA's corresponding regulations prohibiting Defendant from placing phone calls to persons whose phone numbers are registered on the National Do-Not-Call Registry;

e.      Award Plaintiff and the class all expenses of this action, and require that Defendant pay the costs and expenses of class notice and administration;

f.      Award Plaintiff and the class their court costs, and all applicable pre- and post-judgment interest; and,

g.      Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a jury trial in this case.

Respectfully submitted,


KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg (PA ID No. 311908)
30 East Butler Avenue
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*/s/ Craig T. Kimmel*
Craig T. Kimmel, Esq. (PA ID No. 57100)
30 East Butler Avenue
Ambler, Pennsylvania 19002
Telephone: (267) 468-7638
Facsimile: (877) 788-2864
Email: kimmel@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC

Christopher E. Roberts, Esq. (*phv* forthcoming)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
E-mail: croberts@butschroberts.com

*Attorneys for Plaintiff*